**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**FELISHA PEEL, Individually and on**                              **PLAINTIFFS**
**Behalf of All Others Similarly Situated**

**v.**                              **Case No. 4:19-cv-795-BSM**

**PALCO, INC.**                              **DEFENDANT**

### BRIEF IN SUPPORT OF PALCO, INC.'S MOTION FOR SUMMARY JUDGMENT

### I.      INTRODUCTION

Plaintiff Felisha Peel ("Plaintiff") and the other home caregivers who have appropriately and timely filed Consents to Join Collective Action (collectively, "Caregivers") all claim they are due unpaid minimum wage and overtime from Palco, Inc. ("Palco") as a joint employer.  However, these claims fail for one fundamental reason: Palco is not and has never been their employer.

As several Caregivers well know and admitted in their depositions, Palco merely serves as a payroll/fiscal agent for vulnerable individuals (known as Participant-Employers) who specifically elect to be sole employers of their home caregivers under Arkansas's Medicaid plan "IndependentChoices."  Not only do the applicable statutory edicts prescribe Palco's limited role, but every document required under the program and executed between the Participant-Employers and their Caregivers is consistent with this delineation.  Moreover, Palco never acted in any manner as Plaintiffs' joint employer, as it does not hire or fire, supervise or control work schedules or conditions of employment, determine the rate or method of pay, or maintain employee records for the Caregivers.  The non-existence of an employer-employee relationship is fatal to a claim under the Fair Labor Standards Act ("FLSA") and Arkansas Minimum Wage Act ("AMWA").  As there

is no genuine dispute of material fact that Palco is not a joint employer, Palco moves pursuant to Fed. R. Civ. P. 56 for summary judgment on all claims brought by Caregivers.

Palco should be dismissed from this lawsuit because it was not an employer under the FLSA. However, as this is Palco's only chance at summary judgment, Palco must also move at this time to limit the opt-in class period for this collective action to the two year statutory period for FLSA claims, in the event this case survives summary judgment, which it should not. Palco's actions in abiding by the regulatory obligations set by the State of Arkansas were clearly not willful and do not require this Court to impose a three-year statute of limitations. Accordingly, the opt-in Caregivers who provided services to their Participant-Employers more than two years before they filed their Notice of Consent to Join are time barred from recovering damages in this lawsuit, and all damages of remaining Caregivers are likewise limited to a two-year period. Further, Palco acted in good faith and with reasonable belief that it complied with the FLSA, which precludes the availability of liquidated damages. Palco is entitled to partial summary judgment on these issues in accordance with Rule 56 of the Federal Rules of Civil Procedure.

## II.     PROCEDURAL HISTORY

Plaintiff filed a Complaint against Palco on November 13, 2019 alleging a collective action under the FLSA and individual claims under the FLSA and AMWA. (ECF Doc. 1). On December 13, 2019, Palco filed its answer and affirmative defenses, including that it was not an employer of any Caregivers. (ECF. Doc. 10). Plaintiff moved to certify the class on December 30, 2019, which Palco opposed on February 3, 2020 and, in doing so, provided a lengthy explanation of the regulatory framework under which Palco operates and the employment of Caregivers by Participant-Employers. (ECF. Docs. 13, 17).

The Court granted conditional certification over Palco's objection "because an evaluation of Palco's arguments is not appropriate at this stage." (ECF. Doc. 25). The Court also reminded the parties that Palco could "move for decertification later." *Id*. Accordingly, Palco is also moving for decertification of the class pursuant to the motion deadline and contemporaneously with this Motion for Summary Judgment.

Once certified, over 2,000 Caregivers opted-in to the collective action, sometimes filing two and three Notice of Consent to Join the class. Discovery commenced and written interrogatories and document requests were propounded on the Caregivers. Depositions were also requested and scheduled. Several Caregivers refused to participate in discovery or appear for their scheduled deposition. Accordingly, Palco is filing a combined motion to dismiss Caregivers who failed to participate in discovery or appear for depositions, and a motion to strike the duplicative Caregiver filings of the Notice of Consent to Join contemporaneously with this Motion for Summary Judgment.

Lastly, Plaintiffs moved for summary judgment on joint employment prior to the start of discovery. (ECF. Doc. 97). The Court denied Plaintiffs' motion and determined that a genuine issue of fact existed at that time. (ECF. Doc. 130). Palco now moves the Court at the conclusion of discovery to show no genuine issue of material fact remains, and Palco is not, and has never been, the Caregivers' joint employer. The extensive record overwhelmingly demonstrates that the claims against Palco should be dismissed.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment represents one of the Court's tools for assuring the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate when the movant shows no genuine dispute exists as to any

material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c);

*Celotex Corp*, 477 U.S. at 322-24; *Wormley v. Arkla, Inc.*, 871 F. Supp. 1079, 1081-82 (E.D. Ark.

1994).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return

a verdict for either party; a fact is material only if its resolution affects the outcome of the case.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Courts must view the record in the light most favorable to the nonmoving party and afford

it all reasonable inferences.  *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450

F.3d 816, 820 (8th Cir. 2006).  The nonmoving party has an affirmative burden to go beyond the

pleadings and, by depositions, affidavits, or otherwise, to "show[] that the materials cited do not

establish the . . . presence of a genuine dispute" of a material fact.  Fed. R. Civ. P. 56(c)(1)(B).

The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson*, 477 U.S. at 248; *Roeben v. BG Excelsior Ltd. Partnership*, 545 F.3d

639, 642 (8th Cir. 2008) ("To survive summary judgment, a plaintiff must establish his allegations

with enough probative evidence to support a finding in his favor.").  "Evidence, not contentions,

avoids summary judgment."  *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir.

2006).  If a plaintiff cannot support each essential element of her claim, summary judgment must

be granted because a complete failure of proof regarding an essential element necessarily renders

all other facts immaterial.  *Celotex Corp. v. Catrett*, 477 U.S. at 322-23.

### IV.    LAW AND ARGUMENT

**A.    The Participant-Employers are the Sole Employers Under the Regulatory Framework and Palco is a Fiscal Agent to the Participant-Employers.**

The Medicaid program at issue in this case is Arkansas's state plan "IndependentChoices"

under 1915(j) of the Social Security Act, which is administered through Department of Human

Service's ("DHS") Division of Aging and Adult Services ("DAAS").   This program offers

Participant-Employers who are Medicaid-eligible in Arkansas an opportunity to self-direct their personal assistant home services.  AR ADC 016.06.62-200.100; AR ADC 016.06.62-200.200.

"In this program, the participant is the employer and accepts the responsibility in directing the work of their employee to the degree necessary to meet their individual needs for assistance with activities of daily living and instrumental activities of daily living." AR ADC 016.06.62-200.100. "If the participant needs someone to hire and supervise the personal assistant, make decisions about care and administer the cash expenditure plan as well as complete all forms, a Representative may be appointed." *Id*.  The Representative may not be paid for their service and may not be an employee of the Participant-Employer.  AR ADC 016.06.62-202.200.

"IndependentChoices participants or their Representative must be able to assume the responsibilities of becoming an employer by hiring, training, supervising and firing if necessary their directly hired workers. In doing so the program participant accepts the risks, rights and responsibilities of directing their care and having their care needs met."   AR ADC 016.06.62-200.100. "The IndependentChoices program respects the employer authority of the participant who chooses to direct his or her care by hiring an employee who will be trained by the employer (the participant or Representative) to provide assistance how, when, and where the employer or Decision-Making Partner determines will best meet the participant's individual needs."  *Id*.

Likewise, the Participant-Employer must "understand the rights, risks and responsibilities of managing his or her own care with an allowance; or, if unable to make decisions independently, have a willing Representative who understands the rights, risks and responsibilities of managing the care of the participant with an allowance."  AR ADC 016.06.62-200.200.

As set forth above, the regulations specifically identify that the "IndependentChoices participant is the employer of record, and as such, hiring a [p]ersonal [a]ssistant . . . ."  AR ADC

016.06.62-260.420 State regulations expressly note, "[c]aregivers/employees will be recruited, interviewed, hired and managed by the participant as the employer or a designated Representative."   AR ADC 016.06.62-220.200.  These Caregivers also enter written agreements with the Participant-Employers upon hire.  Ark. Admin. Code 016.06.62-260.420; Ark. Admin. Code 016.06.62-220.200.

Per federal guidelines, it is the state's responsibility to provide Participant-Employers with certain support services, including fiscal support services for managing the Participant-Employer's Medicaid funds.  AR ADC 016.06.62-260.100; AR ADC 016.06.62-260.440.  Arkansas selected Palco as the Fiscal Agent in the IndependentChoices program and requires it to receive and disburse funds for the Participant-Employer's self-directed services. AR ADC 016.06.62-260.440. As the Fiscal Agent, Palco is primarily required to collect timesheets for the Caregivers, process the payroll for the Participant-Employers, and withhold all applicable taxes. *Id*.  Palco is also required to "receiv[e] and review[] all necessary state and federal forms required for enrolling the participant to be a 'Household Employer,' as well as New Hire Packets from the enrolling beneficiary's employee." *Id*.

**B.**    **The Record Provides Ample Proof that Palco Was Not an Employer Under the FLSA**

Early in this case, Plaintiff abandoned the argument that Palco was the sole employer of the Caregivers and argued instead that Palco was a joint employer with the Participant-Employers. (ECF. Doc. 97).   When plaintiffs allege joint employment, courts consider whether defendants (1) possess the power to hire and fire the plaintiff; (2) supervise or control plaintiffs' work schedules or conditions of employment; (3) determine the rate or method of payment; and (4) maintain employee records. *Roslov v. DirecTV Inc*., 218 F. Supp. 3d 965, 972 (E.D. Ark. 2016); *Dole v. Continental Cuisine, Inc*., 751 F. Supp. 799, 802–03 (E.D. Ark. 1990) (citing courts have looked

to "factors such as the control of hiring and firing of employees, control of the manner in which work is performed, and the fixing of employee wages in determining who is the 'employer'") (citing *Wirtz v. Pure Ice Co.*, 322 F.2d 259 (8th Cir. 1963); *Fruco Const. Co. v. McClelland*, 192 F.2d 241 (8th Cir. 1951)).  Plaintiff cannot point to any facts or law that support a conclusion of joint employment between Palco and the Participant-Employers, who are enrolled in the IndependentChoices program through the State of Arkansas.

### 1.      Palco Does Not Hire or Fire Caregivers.

With respect to the first factor, Palco exercises no discretion in the hiring or firing of Caregivers.  First, the IndependentChoices plan, which guides the entire framework for Palco's limited role in this process, specifically states that Participant-Employers are the employers of the Caregivers and must be able to hire or fire them.  AR ADC 016.06.62-200.100 (Participant-Employers "must be able to assume the responsibilities of becoming an employer by hiring, training, supervising and firing if necessary their directly hired workers.").  The IndependentChoices program "respects the employer authority of the participant who chooses to direct his or her care by hiring an employee who will be trained by the employer (the participant or Representative) to provide assistance how, when, and where [he or she] determines will best meet the participant's individual needs." *Id*.  Thus, the regulations specifically identify the IndependentChoices' Participant-Employer as the "employer of record" with relation to hiring obligations, and expressly note, "[c]aregivers/employees will be recruited, interviewed, hired and managed by the participant as the employer or a designated Representative."  AR ADC 016.06.62-220.200; AR ADC 016.06.62-260.420 ("The IndependentChoices participant is the employer of record, and as such, hires a Personal Assistant who meets these requirements . . . ").

Caregivers are not introduced to their Participant-Employers by Palco.  As Plaintiff herself testified, she needed no introduction to the Participant-Employer, W.P., for whom she worked because she met him years earlier when he was a resident at Jonesboro Human Development Center where she worked at the time. (Statement of Undisputed Facts ("SOF"), Peel at ¶ 1). Plaintiff testified she understood that IndependentChoices was a Medicaid program and W.P.'s enrollment was facilitated through the State of Arkansas and in accordance with his Medicaid eligibility.  (SOF, Peel at ¶¶ 2-3).

A central component of the IndependentChoices program is permitting a Participant-Employer to hire whomever they want to be their Caregiver.  Consistently, Plaintiff understood that W.P., through his representative, was permitted to choose whoever he wanted to be his Caregiver and he wanted to hire Plaintiff for that position.   (SOF, Peel at ¶¶ 4-5).  Similarly, Plaintiff understood that W.P., through his representative, was responsible for recruiting, interviewing and hiring her as W.P.'s employee to provide the personal assistant services to him. (SOF, Peel at ¶ 6).  Likewise, Plaintiff expressly testified that she understood W.P. was her employer at the time on the program.  (SOF, Peel at ¶ 7).  She also understood she was acting as W.P.'s employee though the IndependentChoices program.  (SOF, Peel at ¶ 8).  Thus, there is no dispute that Plaintiff understood W.P., through his representative, was her employer while she provided Caregiver services to him on the IndependentChoices program, and that she was hired to provide such services for W.P. before Palco ever met her.

Plaintiff also understood that she had to meet certain minimum qualifications in order to work as W.P.'s employee and that those minimum requirements were set by the State of Arkansas, not Palco, for the IndependentChoices program. (SOF, Peel at ¶¶ 13-14).  It is undisputed that

Arkansas DHS, DAAS, not Palco, created the paperwork required of Plaintiff to provide services to W.P.  (SOF, Peel at ¶¶ 9-12).

Although Palco may have collected limited documentation when W.P. enrolled in IndependentChoices, this obligation is actually required of Palco as a Fiscal Agent for the Participant-Employers.  AR ADC 016.06.62-260.440 (stating the Fiscal Agent must collect "all necessary Federal and State forms required for enrolling the participant to be a 'Household Employer,' as well as New Hire Packets from the enrolling beneficiary's employee").  Consistently, Plaintiff admitted that she knew that the paperwork Palco collected was ultimately given to DAAS so she could begin providing Caregiver services to W.P.  (SOF, Peel at ¶ 11).  Other Caregivers likewise admitted they knew these forms needed to be completed and submitted to the State to begin providing Caregiver services for their Participant-Employers in the program.  (SOF, Staples at ¶ 117; Stone at ¶ 182).  In some cases, Palco was not even present when such paperwork was completed or submitted.  Some Caregivers testified they never saw or crossed paths with Palco at any time while providing Caregiver services to their Participant-Employers.  (SOF, Williams at ¶ 61).  They do not recall ever speaking with or calling Palco, and they have never been to Palco's business office (or even know where it is). (SOF, Williams at ¶ 61).

Caregivers overwhelmingly testified that their Participant-Employers, directly or through their representatives, selected and hired them as Caregivers, as these Participant-Employers were the ones who had the authority to recruit, interview and select them as employees. (SOF, Muhammed at ¶ 33; White at ¶¶ 36-37; Kesse at ¶¶ 39, 42; Stuckey at ¶¶ 46-48; Williams at ¶ 54; Brown at ¶¶ 62-63; Reed at ¶¶ 72-73; Clark at ¶ 81; Collins at ¶¶ 87-88; Daniels at ¶¶ 95-96; Scott at ¶¶ 105-106; Staples at ¶¶ 111-113, 115; Byrd at ¶¶ 127-130; Polite at ¶ 141; Carroll at ¶¶ 151-152; Rhodes at ¶¶ 158-160; Hatchett at ¶ 167).  For example, one of the Caregivers, Mr. Staples,

testified that his Participant-Employer could hire whomever she wanted to be her Caregiver.  (SOF, Staples at ¶ 113).   In fact, Mr. Staples knew his Participant-Employer considered two other individuals and interviewed them for the position of Caregiver before selecting Mr. Staples for the position.  (SOF, Staples at ¶ 114).

Similarly, Palco has no authority to make termination decisions.  Rather, these decisions are made by DHS, the Participant-Employers, or their representatives. (SOF, Palco at ¶ 192).  Consistently, Plaintiff admitted that W.P., through his representative, had the authority to fire her as the Caregiver for W.P.  (SOF, Peel at ¶ 15).  Other Caregivers similarly testified that Participant-Employers, or their representatives, had the authority to fire them as Caregivers.   (SOF, Muhammed at ¶ 34; Kesse at ¶ 43; Williams at ¶ 55; Newton at ¶ 71; Reed at ¶ 74; Clark at ¶ 82; Collins at ¶ 89; Daniels at ¶ 100; Scott at ¶ 107; Staples at ¶ 119; Byrd at ¶ 131; Polite at ¶ 142; Quarles at ¶ 145; Carroll at ¶ 153; Rhodes at ¶ 161; Hatchett at ¶ 168).  For example, Ms. Quarles testified the representative for her Participant-Employer had the authority to terminate her employment, stating, "Yes she did. I worked for her." (SOF, Quarles at ¶ 145).  Several Caregivers likewise clarified that no one other than their Participant-Employers or representatives would have had such authority to terminate their employment as a Caregiver.  (SOF, Williams at ¶ 55; Staples at ¶ 119; Carroll at ¶ 153; Rhodes at ¶ 161). Similarly, Caregivers testified that if they resigned they would only have to notify their Participant-Employers and not anyone else. (SOF, Kesse at ¶ 43; Daniels at ¶ 99; Scott at ¶ 107; Staples at ¶ 118; Quarles at ¶ 146).

Thus, the overwhelming weight of the undisputed evidence demonstrates that Palco had no actual decision-making authority for any Participant-Employers related to the selection or hiring of their Caregivers.  Similarly, the decision to terminate a Caregiver's employment fell solely within the Participant-Employer's domain, not Palco's. Failure to meet this first factor alone

precludes a finding of joint employment. Nonetheless, Plaintiffs also cannot offer credible evidence to suggest a joint employment relationship under any of the other factor either.

> **2.      Palco Does Not Supervise or Control Caregivers' Work Schedules or Conditions of Employment.**

Similarly, Caregivers cannot meet the second factor of joint employment as there is no evidence that Palco had any role in supervising or controlling the Caregivers' work schedules or conditions of employment. Operative regulations dictate that the Participant-Employers themselves control their services, which means that each Caregiver's employment situation is unique and dependent upon the circumstances of the Participant-Employer.  AR ADC 016.06.62-200.100 ("The IndependentChoices program respects the employer authority of the participant who chooses to direct his or her care by hiring an employee who will be trained by the employer (the participant or Representative) to provide assistance how, when, and where the employer or Decision-Making Partner determines will best meet the participant's individual needs.").

In fact, Palco is neither present in the home where the Caregivers perform work (so it does not oversee it) nor communicates with Caregivers each day to direct their work.  (SOF, Peel at ¶ 16; Muhammed at ¶ 35; White at ¶ 38; Kesse at ¶ 44; Williams at ¶ 57; Brown at ¶¶ 64-66; Daniels at ¶¶ 101-102; Scott at ¶ 108; Staples at ¶ 120; Byrd at ¶¶ 132-133; Quarles at ¶ 147; Cook at ¶ 164).  The only occasion when Palco would be present in Participant-Employers' homes following collection of Participant-Employers' initial paperwork would be at the direction of DHS, and usually in the context of being asked to check on suspected fraud or abuse of Participant-Employers. (SOF, Palco at ¶ 191).

Therefore, it is the Participant-Employers or their representatives, not Palco, who supervise Caregivers in their homes.  For example, Mr. Stuckey testified that the Participant-Employer told him what job duties to do each day and his mother, as representative for his Participant-Employer,

told him what hours he would work each day.  Palco did not tell him what hours to work each day.  (SOF, Stuckey at ¶¶ 49-50).  Mr. Brown testified that Palco never supervised his Caregiver services, never told him he was doing his job wrong, never disciplined him, never told him how to do his job, and never tried to oversee or manage his duties or tasks.  (SOF, Brown at ¶¶ 67-68).

Thus, Participant-Employers or their representatives are the only ones to supervise the Caregivers.  Participant-Employers direct Caregivers on the services they want performed each day and Caregivers never have to contact anyone from Palco for such direction.  (SOF, Staples at ¶ 120; Hatchett at ¶ 169; Scott at ¶ 109; Daniels at ¶ 103; Clark at ¶ 83; Reed at ¶ 75; Brown at ¶ 66; Stuckey at ¶¶ 49-5-; Kesse at ¶ 40; Cook at ¶¶ 164-165; Williams at ¶ 59; Quarles at ¶¶ 147-148; Carroll at ¶ 155).   As Ms. Daniels testified, the personal care duties she performed varied each day for her Participant-Employers based on their individual needs. (Daniels at ¶ 98).  Participant-Employers are in the only position to know what duties they require or how they wanted them done.  As Ms. Williams testified, her Participant-Employers were "very vocal about how they wanted to be taken care of."  (Williams at ¶ 59).

 Participant-Employers, not Palco, would discipline or evaluate Caregivers and Palco gave no performance reviews or disciplinary actions to Caregivers.  (SOF, Collins at ¶ 93; Kesse at ¶ 45; Brown at ¶ 68; Carroll at ¶ 157; Staples at ¶ 124; Cook at ¶ 165).  Palco also does not oversee or ensure that Caregivers have the necessary skills to provide services to Participant-Employers.  (SOF, Palco at ¶ 194).  Palco provides no training to Caregivers regarding the services they provide to Participant-Employers.  (SOF, Palco at ¶ 193; Reed at ¶ 78; Quarles at ¶ 150; Stone at ¶ 179; Stuckey at ¶ 51; Carroll at ¶ 154; Cook at ¶ 163; Byrd at ¶ 138; Daniels at ¶ 97;  Williams at ¶ 58).

The only "employer" responsibilities Plaintiff even relates to Palco are the time sheets she submitted to Palco and the payments Palco processed for W.P. through IndependentChoices. (SOF,

Peel at ¶ 17).   However, this obligation is likewise required of Palco as the Fiscal Agent for Participant-Employers under the regulations.   AR ADC 016.06.62-260.440 (stating the Fiscal Agent must "[c]ollect and process timesheets of support workers" and "[p]rocess payroll, withholding, filing and payment of applicable federal, state and local employment-related taxes and insurance").   Plaintiff testified she actually understood that Palco was the "vendor" that provided financial management services to W.P. and processed payments using money funded by Medicaid through DHS for each service period she worked for W.P. (SOF, Peel at ¶¶ 18-19). Caregivers who also understood Palco's limited role testified that Palco was the financial management services provider for the purpose of payment based on signed time sheets authorizing the same.   (SOF, Stone at ¶ 180; Williams at ¶ 53; Collins at ¶¶ 91, 94; Byrd at ¶ 135).

It is likewise undisputed that Palco must receive signed, approved timesheets authorizing payment by Participant-Employers before any amount could be processed through their Medicaid funds, which is consistent with Palco's role as the fiscal management services provider.  (SOF, Palco at ¶ 185).   Even the Caregivers understood that Palco needed signed, approved timesheets authorized as true and correct by Caregivers and Participant-Employers, or their representatives, to process payment of Medicaid funds.   (SOF, Peel at ¶ 20; Staples at ¶ 126; Daniels at ¶ 104; Hatchett at ¶ 172; Polite at ¶ 143; Stone at ¶ 180; Williams at ¶ 60).   Plaintiff herself testified her time sheets were submitted to Palco after being signed by W.P., through his representative, which authorized the time sheets were true and correct hours worked. (SOF, Peel at ¶ 21).   If the time sheets were incomplete, they were completed and resubmitted in order to process Medicaid funds. (SOF, Peel at ¶ 22).   Once time sheets were complete and resubmitted, payments were processed for Participant-Employers' Medicaid funds. (SOF, Peel at ¶ 23).   Thus, all processing of time sheets, and payment of the same, followed the direction of Medicaid.   Even the timing of the

timesheet submission (twice a month) was set by the State, not Palco.  (SOF, Peel at ¶ 24); AR ADC 016.06.62-260.100 ("Personal assistants will complete their timesheets and obtain the authorizing signature of the beneficiary. The timesheet will be submitted to the fiscal agent bi-weekly.").  Time sheets were also submitted in various ways and that choice for method of submission was made by the Caregiver or Participant-Employer, not Palco. (SOF, Peel at ¶ 31).

Finally, regarding work schedules, Palco had no decision-making authority to set hours for Caregivers.  Regarding the number of total approved hours for work, a nurse from DHS assesses the Participant-Employers and authorizes participation in the Independent Choices program, which is then used to set the number of approved hours for Participant-Employers.  (SOF, Stone at ¶¶ 175-176; Staples ¶ 125; Brown ¶ 69-70; Reed at ¶ 79; Byrd at ¶ 134).  Participant-Employers then receive a service budget through IndependentChoices that covers the approved hours they receive from the State. (SOF, Peel at ¶ 25).  The service budget, which is used to pay for hours worked by Caregivers, is funded through Medicaid money, and is facilitated by DHS.  (SOF, Peel at ¶ 26; Stone at ¶ 178).  DHS, not Palco, makes the decision to increase or decrease the service budget.  (SOF, Peel at ¶ 27). DHS, not Palco, makes the decision to set the total number of approved Caregiver hours and, in the event a challenge is brought regarding those approved hours, the challenge also goes through DHS, not Palco.  (SOF, Peel at ¶ 27).  DHS even sets the start date on which Caregivers may begin providing services to their Participant-Employers.  (SOF, Peel at ¶ 28).

As for the actual schedule Caregivers work in the Participant-Employers' homes, Plaintiff set her own schedule to cover her Participant-Employer's needs.  (SOF, Peel at ¶ 29).  Other Caregivers work the specific weekly schedule set by Participant-Employers or their representatives.  (SOF, Kesse at ¶ 41; Williams at ¶ 56; Clark at ¶ 84; Collins at ¶ 92; Scott at ¶

109; Staples at ¶¶ 121-122; Byrd at ¶¶ 136-137; Hatchett at ¶ 170; Carroll at ¶ 156; Cook at ¶ 166; Daniels at ¶ 103; Reed at ¶¶ 76-77; Quarles at ¶¶ 148-149). If Caregivers needed to take time off from performing Caregiver duties, they need only tell their Participant-Employers, not Palco. (SOF, Staples at ¶ 123; Hatchett at ¶ 171; Reed at ¶ 80; Collins at ¶ 90; Stuckey at ¶ 52). The undisputed facts in this case demonstrate that Palco never exercised any supervision or control over the Caregiver's work schedule or conditions of employment and the Caregivers cannot meet this second element of joint employment.

### 3.     Palco Did Not Determine the Rate and Method of Payment.

Palco also has no control over setting pay rates or the method of payment for Caregivers. Pay rates for Caregivers are set by DHS using their own nurse's medical assessment of the Participant-Employer along with an algorithm based on certain factors, such as gender and category of eligibility, which equates to a dollar amount. (SOF, Palco at ¶ 196).  This fact is undisputed.  Plaintiff testified she knew DHS was in control of setting her pay rate for her work with W.P.  (SOF, Peel at ¶ 30). Other Caregivers likewise understood their pay rate on the IndependentChoices program was set by DHS, not Palco.  (SOF, Stone at ¶ 177; Clark at ¶ 85).

Palco also does not set the method of payment to Caregivers.  Rather, the Caregivers arranged how they would like their pay processed by Palco.  For example, Ms. Scott requested direct deposit for the pay Palco processed for her Participant-Employer, even though she knew she could have been paid in other ways.  (SOF, Scott at ¶ 110).  Caregivers who opted to receive direct deposit as their method of pay receive a "Direct Deposit Advice" that identifies their Participant-Employer by name as their employer. (SOF, Stone at ¶ 181). However, Ms. Clark did not want direct deposit as her method of pay and requested a paper check be mailed to her for payment of her Caregiver services through her Participant-Employer.  (SOF, Clark at ¶ 86).  In electing to

have a check mailed to her she admitted that she understood she had the choice to decide what method of payment she wanted to receive. (SOF, Clark at ¶ 86).

Palco had no role in setting the pay rate or method of payment to Caregivers.  As the pay rate was set by DHS, and the method of payment was selected by the Caregivers, this factor also weighs against a finding of joint employment and in favor of a finding that Palco was not an employer under the FLSA.

### 4.    Participant-Employers Maintained the Employment Records for the Caregivers.

Palco's role in maintaining limited records is required by both written agreement and its obligations under the IndependentChoices regulatory framework as part of its fiscal management services to Participant-Employers.  Plaintiff admitted she knew Palco was obligated through a contract she signed with DHS to keep these time records of personal assistant services provided to her Participant-Employer and payments made through IndependentChoices for her Participant-Employer.   (SOF, Peel at ¶ 32).   Caregivers also signed a contract with DHS and understood that Palco was obligated to keep time and pay records in the IndependentChoices program. (SOF, Polite at ¶ 144; Byrd at ¶ 139; Hatchett at ¶ 173).  Moreover, Caregivers testified Participant-Employers or their representatives keep their employment records in their homes.  (SOF, Rhodes at ¶ 162; Byrd at ¶ 140).

Although Palco may have collected some initial DHS forms at enrollment, it is undisputed that those records were created by the Arkansas DHS, DAAS, not Palco, and then sent over to DHS, DAAS for their purposes, not Palco's.  (SOF, Peel at ¶¶ 11-12; Hatchett at ¶ 174).  These DHS forms include a provider agreement, employment application, and participant worker agreement. (SOF, Palco at ¶ 195). Palco does not look at them. (SOF, Palco at ¶ 195). Palco does not need them. (SOF, Palco at ¶ 195). Palco is not required to keep them for their financial

management services and would only have them pursuant to record retention requirements in their DHS contract.  (SOF, Palco at ¶ 195). Palco only needs to keep records dictated by its DHS contract or IRS rules. (SOF, Palco at ¶ 195).

Thus, Palco does not need any employment records for the Caregivers and those were kept by DHS and the Participant-Employers themselves.  Palco's copies were maintained pursuant to record retention requirements place on it by DHS.  Thus, any records it kept were driven by the DHS contract or tax law for its payment processing.  The evidence, as verified through the Caregivers' own testimony, demonstrates that Caregivers cannot meet this final element of joint employment. Palco should be dismissed from this lawsuit because it was not an employer under the FLSA.

### C.    Palco's Alleged Actions Were Not Willful, And Thus, Plaintiffs' Claims Should Be Subject to a Two Year Statute of Limitations.

Actions for alleged violations of the FLSA's unpaid overtime compensation provisions "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Thus, the limitations period governing plaintiffs' FLSA wage claims is dependent on whether any alleged violation by the defendants can be considered "willful" within the meaning of the FLSA.

The statute of limitations is increased from two to three years in cases that involve "willful" violations of the FLSA. 29 U.S.C. § 255(a).  While the statute does not define the term "willful," the meaning for purposes of the FLSA's statute of limitations was addressed by the Supreme Court in *McLaughlin v. Richland Shoe Co*., 486 U.S. 128 (1988).  *Richland Shoe* held that in order for a willful violation to be established, it must be shown by the plaintiff "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

*Id*. at 133. In so holding, *Richland Shoe* noted that an alternative standard used by some courts, which conditioned the issue of willfulness on whether or not the employer recognized the FLSA to be "in the picture," did not reflect congressional intent with regard to defining liability under the Act. *Id*. at 134 n.12. The Court found that Congress "intended to draw a significant distinction between ordinary violations and willful violations." *Id*. at 132.

The Court rejected the less stringent standard because it "virtually obliterate[d] any distinction between willful and nonwillful violations [and] 'it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability.'" *Id.* at 132-33 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)).  In its critique of the less stringent standard, the Court made clear that an company's general knowledge regarding a statute's potential applicability does not prove willfulness. *Id*.; see also *Hanger v. Lake Cnty*., 390 F.3d 579, 583-84 (8th Cir. 2004). The Court further explained that willfulness requires more than mere negligence, and more than a mere failure to seek legal advice about a potentially difficult decision under the FLSA.  *Richland Shoe*, 486 U.S. at 134–35. The burden of establishing willfulness rests on the plaintiffs. *Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003); *Fenton v. Farmers Ins. Exch*., 663 F. Supp. 2d 718, 728 (D. Minn. 2009).

The *Richland Shoe* standard has since been repeatedly applied within the Eighth Circuit. See e.g., *Samuels v. Kansas City Mo. Sch. Dist*., 437 F.3d 797, 802-03 (8th Cir. 2006) (noting that the *Richland Shoe* "recognizes an employer's general knowledge about the statute's potential applicability, by itself, fails to demonstrate willfulness."); *Bretherick v. Crittenden County, Arkansas*, No. 3:05CV00024 JLH, 2007 WL 890200, at *2 (E.D. Ark. Mar. 21, 2007) (citing *Richland Shoe* for the proposition that "neither an employer's general knowledge about the statute's potential applicability, nor an employer's lack of a reasonable basis for believing that it

was complying with the FLSA, is by itself sufficient to demonstrate an employer's willfulness"). Courts outside the Eighth Circuit have observed that "[r]eckless disregard can be shown through "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Mumby v. Pure Energy Servs. (USA), Inc*., 636 F.3d 1266, 1270 (10th Cir. 2011) (citing *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68 (2007)); see also *Pignataro v. Port Authority of New York and New Jersey*, 583 F.3d 265 (3rd Cir. 2010) (finding that an employer has not willfully violated the FLSA if it acts reasonably in determining its legal obligation); *Ikossi-Anastasiou v. Board of Supervisors of Louisiana State Univ*., 579 F.3d 546 (5th Cir. 2009) (evidence that employee was paid less than many of her male colleagues and that her employer knew she was dissatisfied with the difference is not enough to raise a fact question as to whether employer knew or recklessly disregarded that its pay scale was prohibited by the FLSA).

Here, even if Caregivers could establish liability, which they cannot, there is no evidence Palco willfully ignored its FLSA obligations or acted with reckless disregard. The undisputed facts outlined herein demonstrate that Palco attempted to fulfill its regulatory obligations, which are set by the State of Arkansas and the rules of Medicaid, by receiving Caregivers' time sheets and processing Participant-Employers' Medicaid funds as payroll for their employees. AR ADC 016.06.62-260.440. Specifically, the money that passes through the IndependentChoices program is not owned by the Participant-Employer. It is owned by Medicaid and given to Palco to distribute according to Medicaid rules. (SOF, Palco at ¶¶ 183-184). Palco processes pay for the Participant-Employers for each service period unless the time sheet is somehow incomplete and rejected. The reasons for rejecting a time sheet are limited and based largely on an error in submission or completion. (SOF, Palco at ¶ 186). Palco would "get in trouble" for processing "bad" time sheets, including being sanctioned or being fired by DHS. (SOF, Palco at ¶ 187). Again, these are

Medicaid dollars being used to process payroll for the Participant-Employers, and Palco must follow Medicaid rules in processing it. (SOF, Palco at ¶¶ 183-184).  These are not the kinds of facts that show willfulness or reckless disregard.

All Caregivers also receive the state minimum wage in Arkansas. (SOF, Palco at ¶ 188). Even when minimum wage increased in the State of Arkansas, it was DHS who instructed how to adjust the Participant-Employers' budgets to account for the increase in pay.  Palco received notice from DHS and DHS made the decision whether to increase the Participant-Employers' budget or force a cut in hours to account for the increase in minimum wage for the Caregivers.  (SOF, Palco at ¶ 189).  Palco takes its direction from DHS for each Participant-Employers' budget and it is not a one-size-fits-all solution from DHS.  (SOF, Palco at ¶ 190).  To now turn around and claim that Palco willfully ignored FLSA obligations or acted with reckless disregard is both untrue and unfair when it is merely discharging its responsibilities pursuant to state regulations, Medicaid rules, and its DHS contract.

There is no evidence Palco willfully violated the FLSA.  Accordingly, the two-year statute of limitations applies to Plaintiffs' claims and all claims beyond the two-year time period should be time-barred.

### D.   Palco's Alleged Actions Were in Good Faith, And Thus, Plaintiffs Are Not Entitled To An Award Of Liquidated Damages

If actions are taken "in good faith" and with "reasonable grounds for believing" that they complied with the FLSA, "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in § 216 of this title." 29 U.S.C. § 260; see *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir.1999) ("An award of liquidated damages under § 216(b) is mandatory unless the employer can show good faith and reasonable

grounds for believing that it was not in violation of the FLSA."); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1084 (8th Cir. 2000) (same).

The "good faith" requirement is a subjective standard where the employer must establish "an honest intention to ascertain and follow the dictates of the FLSA." *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941-42 (8th Cir. 2008) (citing *Hultgren v. City of Lancaster*, 913 F.2d 498,509 (8th Cir. 1990). "To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991). "To avoid a liquidated damages award . . . the employer must also prove its position was objectively reasonable." *Hultgren*, 913 F.2d at 509; see also *Cooper*, 940 F.2d at 908, quoting *Williams v. Tri-County Growers*, 747 F.2d 121, 128 (3d Cir. 1984) ("The reasonableness requirement imposes an objective standard by which to judge the employer's conduct. Ignorance alone will not exonerate the employer . . . .").

As explained in detail above, Palco had a good faith basis to believe it was following the dictates of the FLSA because it followed the laws and guidance set out for it through the State of Arkansas regulations and by Medicaid rules.  (SOF, Palco at ¶¶ 183-184).  Accordingly, Palco had a good faith basis for believing it was complying with FLSA's requirements and Plaintiffs cannot recover against Palco for liquidated damages.

## V.     CONCLUSION

The facts demonstrate that Palco was never an employer of Plaintiff or the Caregivers at any time.  To reach a contrary conclusion will not only belie the regulatory framework under which Palco operates, but attempt to dismantle an entire system carefully built to coexist with federal law and critical to providing necessary financial assistance to vulnerable citizens of this State through a neutral Fiscal Agent charged with holding and applying their Medicaid money.

For the reasons set forth above, Palco, Inc. respectfully requests the Court grant Palco's Motion for Summary Judgment on the issue of joint employment.  In the event this case survives summary judgment, which it should not, Palco also acted in good faith and with reasonable belief that their actions did not violate the FLSA, and it did not act willfully by merely discharging its duties to Participant-Employers by paying their Caregivers in accordance with available Medicaid funds.  Palco respectfully requests that this Court grant their motion for partial summary judgment as to liquidated damages and a two-year statute of limitations.

WHEREFORE, Palco respectfully asks this Court to:

- grant summary judgment in their favor in the issue of joint employment and dismiss Palco with prejudice;

- grant partial summary judgment in Palco's favor on the issue of liquidated damages;

- grant partial summary judgment in Palco's favor as to the two-year statute of limitations;

- dismiss Caregivers who provided services to their Participant-Employers more than two years before they filed their Notice of Consent to Join as time barred from recovering damages; and

- grant Palco any further relief to which it may be entitled.

Dated November 3, 2021.

Respectfully submitted

James M. Gary, AR Bar No. 80051
(Attorney in Charge and To Be Noticed)
KUTAK ROCK LLP
124 West Capitol Avenue, Suite 2000
Little Rock, AR  72201
Attorney Direct:  501.975.3140
Telephone:  501.975.3000
Fax:  501.975.3001
jim.gary@kutakrock.com

and

Gillian G. O'Hara (NE Bar No. 22414)
(*admitted pro hoc vice*)
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE  68102
Telephone:  (402) 346-6000
Fax:  (402) 346-1148
gigi.ohara@kutakrock.com

*Attorneys for Defendant*