## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**FELISHA PEEL, individually and on**                                    **PLAINTIFF**
**behalf of all others similarly situated**

**v.**                          **CASE NO. 4:19-CV-00795-BSM**

**PALCO, INC.**                                                          **DEFENDANT**


### ORDER

Palco, Inc.'s motion for summary judgment [Doc. No. 133] is granted because no reasonable juror could conclude that Palco was plaintiff's employer.

### I. BACKGROUND

Felisha Peel is suing Palco under the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA"). Peel previously moved for summary judgment on the issue of Palco's status as an employer, and her motion was denied. Doc. Nos. 97, 130. With discovery now complete, Palco moves for summary judgment on the same issue of joint employment. Doc. No. 133. The undisputed facts, taken in a light most favorable to Peel as the non-moving party, are as follows.

Peel and other home caregivers were paid an hourly rate under a government-funded program called IndependentChoices. Pl.'s Resp. SUMF ¶¶ 2, 26; Doc. No. 144. IndependentChoices is an Arkansas Medicaid program that allows program participants to select home caregivers that fit their personal and medical needs. *Id*. ¶¶ 2, 4. Program participants become their caregivers' employers and have the authority to fire them. *Id*. ¶¶

7–8, 15.  Palco communicated with the home caregivers during their onboarding process and provided the caregivers forms to complete.  *Id.* ¶¶ 7–12.  Palco collected the completed forms, but the home caregivers could not begin work until the Arkansas Department of Human Services ("DHS") approved their paperwork.  *Id*. ¶¶ 9–12, 28.

Palco told the home caregivers how many hours they were approved to work.  *Id*. ¶¶ 17, 25.  Palco occasionally visited the homes of program participants while their caregivers were present.  *Id*. ¶¶ 7–8, 16–17.  The home caregivers submitted their time sheets to Palco after they had been signed by their program participants.  *Id*. ¶¶ 17, 20–24, 31.  Palco issued payments to home caregivers.  *Id*. ¶¶ 17–20.  These payments were funded with Medicaid dollars tied to the program participant, and DHS set the rate of pay for each caregiver.  *Id.* ¶¶ 26, 30.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings.  *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).  Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial.  *Id.*  All reasonable inferences must be drawn in a light most favorable to the nonmoving party.  *Holland v. Sam's Club*, 487 F.3d

641, 643 (8th Cir. 2007).  The evidence is not weighed, and no credibility determinations are made.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

III. DISCUSSION

Summary judgment is granted because no reasonable juror could conclude that Palco was plaintiff's joint employer.  This is true because Palco could not hire and fire home caregivers, did not control caregivers' schedules or their conditions of employment, and did not determine caregivers' rate and method of pay.

Courts look at the economic realities of the circumstances to determine whether an entity is an employer under the FLSA.  *Goldberg v. Whitaker*, 366 U.S. 28, 33 (1961).  The Eighth Circuit analyzes whether the entity (1) could hire and fire the plaintiff; (2) controlled the plaintiff's schedule or conditions of employment; (3) determined rate and method of payment; and (4) maintained the plaintiff's employment records.  *Carlton v. JHook Invs., Inc.*, No. 4:17-cv-76-KGB, 2019 WL 4784801, at *12 (E.D. Ark. Sep. 30, 2019) (citing *Childress v. Ozark Delivery of Mo., L.L.C.*, 95 F.Supp.3d 1130, 1138–39 (W.D. Mo. Mar. 5, 2015)).  No single factor is dispositive.  *Carlton*, 2019 WL 4784801, at *12 (citing *Childress*, 95 F.Supp.3d at 1139).

A.   <u>Power to Hire and Fire</u>

The first factor to examine is whether Palco could hire and fire home caregivers in the IndependentChoices program.  It is undisputed that Palco did not recruit caregivers into the program.  Pl.'s Resp. Mot. Summ. J. at 8, Doc. No. 143.  There is also no evidence that Palco

3

conducted interviews.  Instead, Arkansas regulations made program participants responsible for hiring, training, supervising and firing their own caregivers. Ark. Admin. Code § 016.06.62-200.100.

Peel argues that even through program participants selected their own caregivers, Palco maintained control over the hiring process because it collected documents from new caregivers to ensure they met state guidelines.  Pl.'s Resp. Mot. Summ. J. at 8.  Peel overstates Palco's role in the hiring process.  As the "fiscal agent" for the IndependentChoices program, Palco was required to collect "New Hire Packets" from caregivers.  Ark. Admin. Code  § 016.06.62-260.440.  Many of the forms Palco collected were DHS forms, including a provider agreement, employment application, and participant worker agreement.  Pl.'s Resp. SUMF ¶ 195; Paladino Dep. at 8:14-22, Doc. No. 143-1.  Palco did not need these forms and passed them to DHS.  *Id*.

Caregivers could not begin working until DHS approved their paperwork.  Pl.'s Resp. SUMF ¶ 28.  This makes sense because the state of Arkansas set the minimum requirements for individuals to participate as caregivers in the IndependentChoices program, not Palco. *Id*. ¶ 14.  The record does not suggest that Palco assessed the qualifications of prospective caregivers, nor does it indicate that Palco ever disapproved the caregivers chosen by program participants.  Put simply, Palco exercised very little control over the hiring process.  This is true even if some caregivers believed they were applying to work for Palco rather than DHS or the program participants.  *See Wigfall v. Saint Leo Univ. Inc*, No. 8:10-cv-2232-T-24-

4

TGW, 2012 WL 717868, at *7 (M.D. Fla. Mar. 6, 2012), *aff'd*, 517 F. App'x 910 (11 Cir. 2013) (finding defendant was not plaintiffs' joint employer despite plaintiffs' subjective belief to the contrary).

The record also does not support that Palco had the power to fire caregivers. Peel does not dispute that program participants could fire their caregivers, but contends Palco had termination authority as well. Pl.'s Resp. Mot. Summ. J. at 10–11. Peel's argument fails because she does not point to any regulation or policy that empowers Palco to fire home caregivers, nor does she cite a single instance of Palco actually firing a caregiver. *See Childress*, 95 F.Supp.3d at 1145 (finding joint employment when defendant had power to fire through the employee grievance process and explicitly reserved the right to terminate employees at any time). Instead, Peel relies on the statements of several caregivers who speculated that Palco could fire them for poor performance. *See Wigfall,* 2012 WL 717868, at *7 (plaintiffs' subjective beliefs did not establish joint employment); *see also Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 720 (8th Cir. 2019) ("To show a genuine dispute of material fact, a party must provide more than conjecture and speculation"). The record shows that Palco could not hire and fire the plaintiff, and this factor weighs against finding joint employment.

B.   Control of Schedules and Conditions of Employment

The second factor to examine is whether Palco controlled the home caregivers' schedules and conditions of employment. Arkansas regulations gave program participants

full authority to determine "how, when, and where" their caregivers provided assistance. Ark. Admin. Code § 016.06.62-200.100.  While program participants decided these details, the number of hours a caregiver was approved to work was based on the program participant's service budget set by DHS.  Peel Dep. at 80:16–85:25, Doc. No. 143-3.  Peel argues that some caregivers believed Palco set their work schedules, but many of the statements she relies on reflect only that Palco told caregivers how many hours DHS had approved them to work.  *See* Pl.'s Resp. Mot. Summ. J. at 14.  Peel also admits that caregivers "may have been misinformed regarding the entity that had actual authority to make these specific determinations."  *Id*.  Even if some caregivers felt that Palco controlled their schedules, the record reflects that Palco did not direct the specific days, or times of day, any caregiver was to work.

Peel also argues that Palco supervised caregivers by making periodic visits to program participants' homes.  *Id*. at 11–13.  She contends Palco used these visits to ensure caregivers were providing proper care.  *Id*.  Palco asserts that these visits were infrequent and done at the request of DHS.  Paladino Dep. at 26:9–28:13.  DHS did not require Palco to visit every program participant's home, and some caregivers never saw a Palco representative.  *Id*.; Williams Dep. at 27:4–5, 57:11–13, Doc. No. 143-27.

Peel's argument that Palco supervised caregivers through periodic visits is not supported by the record.  The fact that Palco did not visit all program participants undercuts Peel's argument that the purpose of the visits was to supervise caregivers.  Def.'s Reply Mot.

6

Summ. J. at 9, Doc. No. 148.  While some caregivers testified that Palco representatives would visit to make sure program participants were receiving proper care, this aligns with Palco's contention that DHS decided when such visits were needed.  Paladino Dep. at 26:9–28:13.  More importantly, Arkansas regulations dictated that program participants controlled their own services, and Peel even admits that participants "managed the day-to-day tasks the caregivers performed."  Pl.'s Resp. Mot. Summ. J. at 11.  There is no evidence that Palco used these periodic visits to train caregivers, manage their duties, or formally evaluate their job performance.  *See Childress*, 95 F.Supp.3d at 1145 (considering various factors to determine whether defendant controlled plaintiff's conditions of employment).

Peel further argues that Palco controlled caregivers' conditions of employment by collecting the caregivers' time sheets and processing their payroll.  Pl.'s Resp. Mot. Summ. J. at 13–14.  Peel also asserts that Palco imposed "very specific requirements on the format and accuracy" of caregiver time sheets and would reject time sheets for noncompliance.  *Id*. at 14.  While establishing policies and procedures can suggest control of a plaintiff's conditions of employment, *see Childress* 95 F.Supp.3d at 1145, Palco's time sheet policies were limited and driven by DHS requirements.  Palandino Dep. at 13:21–15:1; 74:10–77:22.  Moreover, control over the conditions of employment requires more than the provision of payroll services.  *See Clyde v. My Buddy the Plumber Heating & Air, LLC*, No. 2:19-cv-756-JNP-CMR, 2021 WL 778532 (D. Utah Mar. 1, 2021); *see also Beck v. Boce Grp., L.C.*, 391 F.Supp.2d 1183, 1187 (S.D. Fla. 2005).  The record shows that Palco did not control the

conditions of the caregivers' employment, and this factor also weighs against finding joint employment.

        C.      <u>Determination of Rate and Method of Payment</u>

The third factor to examine is whether Palco determined the home caregivers' rate and method of payment. Peel admits that Palco did not set pay rates for home caregivers. Pl.'s Resp. Mot. Summ. J. at 15–16. DHS set these rates based on their medical assessment of program participants and the results of an algorithm. Pl.'s Resp. SUMF ¶ 196.

Palco further contends that it did not determine the method of payment because caregivers decided for themselves whether to be paid through direct deposit or paper checks. Def.'s Br. Supp. Mot. Summ. J. at 15–16, Doc. No. 134. In *Childress*, the Eighth Circuit examined this factor more broadly and found the defendant had "a significant role in determining general compensation policies and ensuring their compliance with the FLSA." *Childress*, 95 F.Supp.3d at 1144. The record does not indicate that Palco similarly assumed responsibility for federal wage-hour compliance. *See Id*. While it processed payroll for program participants receiving funds through DHS, Palco had no authority to adjust the hours caregivers were approved to work, authorize caregivers to work overtime, or compensate them in a manner different from the hourly rate structure dictated by DHS. *See Carlton,* 2019 WL 4784801, at *3 (finding defendant set the method of payment when it paid drivers an hourly rate, overtime, and a commission). Because Palco did not determine the rate and method of payment for caregivers, this factor also weighs against finding joint employment.

D.    Maintenance of Employment Records

The final factor to examine is Palco's role in maintaining employment records.  It is undisputed that Palco maintained caregiver payroll records.  Def.'s Br. Supp. Mot. Summ. J. at 16–17.  Palco admits that it also kept  certain caregiver enrollment forms, but asserts that it did not even look at these documents and only retained them because it was required to by its contract with DHS.  *Id*.  Palco argues that the records it maintained were limited and did not include several standard employment records such as those related to performance evaluation, training, discipline, drug screening, or benefits.  Def.'s Reply Mot. Summ. J. at 11.   Peel contends that the records Palco kept were not limited and that the reason it maintained them is irrelevant to the question of Palco's status as a joint employer.  Pl.'s Resp. Mot. Summ. J. at 16 (citing *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1316 (11th Cir. 2013)).

On balance, this factor weighs in favor of finding that Palco was plaintiff's joint employer.  While the scope of Palco's record retention is disputed, there is no doubt that Palco maintained multiple caregiver records to fulfil its payroll processing function and comply with retention requirements in its DHS contract.  *See* Def.'s Br. Supp. Mot. Summ. J. at 16–17.  Palco's maintenance of some employment records, however, does not alone establish joint employment.  *See Ray v. Cal. Dep't of Soc. Servs.*, No. cv-17-04239-PA, 2020 WL 6784527, at *9 (C.D. Cal. Oct 27, 2020) (finding county was not home care providers' joint employer despite maintaining their employment records).

9

Despite this, no reasonable jury could conclude that Palco was plaintiff's joint employer because Palco's role as fiscal agent in the IndependentChoices program was prescribed by regulation and does not satisfy the economic realities test of joint employment. Peel's argument for joint employment leans heavily on the Third Circuit's decision in *Talarico v. Public Partnerships, LLC*, but that case is distinguishable because the defendant promulgated work rules for the home caregivers, trained the caregivers, and required them to participate in requested meetings. *Talarico v. Pub. P'shps., LLC*, 837 F. App'x 81, 85 (3rd Cir. 2020). The defendant in *Talarico* also capped the maximum rate of pay the caregivers could receive. *Id.*

E.      Arkansas Minimum Wage Act

The parties do not argue that the issue of joint employment should be analyzed differently for Peel's AMWA claims. The FLSA and AMWA define an employer very similarly. *See* 29 U.S.C. § 203(d); Ark. Code Ann. § 11-4-203(4). When claims are brought under both acts, their parallel provisions should generally be interpreted in the same manner. *See Cummings v. Bost, Inc.*, 218 F. Supp. 3d 978, 985 (W.D. Ark. 2016) (quoting *Carter v. Primary Home Care of Hot Springs, Inc.*, 2015 WL 11120563, at *2 (W.D. Ark. May 14, 2015)). Therefore, plaintiff's AMWA claims also fail because no reasonable juror could conclude that Palco was plaintiff's employer.

IV. CONCLUSION

For the foregoing reasons, Palco's motion for summary judgment [Doc. No. 133] is granted.   Given the findings above, this order does not reach the issues of liquidated damages, the statute of limitations period, or the dismissal of plaintiffs whose claims may be time barred.   Palco's motion for decertification [Doc. No. 136] and motion to dismiss certain opt-in plaintiffs and strike duplicative notices of consent [Doc. No. 139] are denied as moot.

IT IS SO ORDERED this 2nd day of February, 2022.


_____
UNITED STATES DISTRICT JUDGE